[No. 67130-8-I.   Division One.   August 29, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS EUGENE
MORGAN, *Appellant*.

*Thomas E. Doyle*, for appellant.

*Jon Tunheim, Prosecuting Attorney*, and *John C. Skinder, Deputy*, for respondent.

¶1 Dwyer, C.J. — Thomas Morgan appeals from his convictions for conspiracy to intimidate a witness and unlawful delivery of a controlled substance within 1,000 feet of a school bus route stop. Contrary to Morgan's contention, the information by which Morgan was charged sufficiently alleged the elements of the crime of conspiracy to intimidate a witness. Morgan further contends that the jury was erroneously instructed that it must be unanimous in order to find that the State failed to prove the facts necessary to support the imposition of the school bus sentence enhancement. Because this issue is not of constitutional magnitude, however, it may not be raised for the first time on appeal. Accordingly, we affirm.

## I

¶2 Morgan was charged by second amended information with unlawful delivery of a controlled substance (methamphetamine) and with conspiracy to intimidate a witness. The State sought a sentence enhancement pursuant to RCW 69.50.435(1), alleging that the delivery of methamphetamine had occurred within 1,000 feet of a school bus route stop. The jury convicted Morgan as charged and found, by special verdict, that the State proved the facts required for the imposition of the sentence enhancement.

¶3 Morgan appeals.

## II

¶4 Morgan first contends that the portion of the second amended information charging him with conspiracy to in-

timidate a witness fails to include all of the elements of that crime and, thus, is constitutionally insufficient. We disagree.

¶5 A charging document is constitutionally adequate only if it sets forth all of the essential elements of the crime charged. *State v. Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995). "The purpose of this 'essential elements' rule is to give notice of the nature and cause of an accusation against the accused so that a defense can be prepared." *Campbell*, 125 Wn.2d at 801. The exact words of the statute need not be set forth in the charging document. *State v. Kjorsvik*, 117 Wn.2d 93, 108, 812 P.2d 86 (1991). Rather, "the question . . . is whether all the words used would reasonably apprise an accused of the elements of the crime charged." *Kjorsvik*, 117 Wn.2d at 109.

¶6 A challenge to the sufficiency of a charging document may be raised for the first time on appeal. *Kjorsvik*, 117 Wn.2d at 102. However, when such an objection is so raised, we apply a stricter standard of review in which the language of the charging document is liberally construed in favor of validity. *Kjorsvik*, 117 Wn.2d at 103-05. In such a case, we "examine the document to determine if there is any fair construction by which the elements are all contained in the document." *State v. Hopper*, 118 Wn.2d 151, 155-56, 822 P.2d 775 (1992). However, even where such a construction is possible, the charging document is sufficient only if "the defendant has suffered no prejudice as a result of the ambiguous or vague language in the information." *Hopper*, 118 Wn.2d at 156.

> This stricter standard, to be used when the sufficiency of an indictment is challenged initially on appeal, permits a court to construe a charging document quite liberally. If the information contains allegations that express the crime which was meant to be charged, it is sufficient even though it does not contain the statutory language. A court should be guided by common sense and practicality in construing the language. Even missing elements may be implied if the language supports such a result.

*Hopper*, 118 Wn.2d at 156 (citations omitted).

¶7 Here, Morgan challenges the sufficiency of that part of the second amended information charging him with conspiracy to intimidate a witness in violation of "RCW 9A.72.110(1)(a) and RCW 9A.28.040." Clerk's Papers (CP) at 8. The information provides:

> In that the defendant, THOMAS EUGENE MORGAN, in the State of Washington, on or between May 18, 2009 and June 16, 2009, did conspire by use of a threat directed against a current or prospective witness, attempted to influence the testimony of that person, and took a substantial step toward commission of this crime.

CP at 8. RCW 9A.28.040(1) sets forth the statutory elements of criminal conspiracy:

> A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

The crime of intimidating a witness, set forth in RCW 9A.72.110(1)(a), is committed where "a person, by use of a threat against a current or prospective witness, attempts to . . . [i]nfluence the testimony of that person."

¶8 Morgan first asserts that the information is deficient because it does not allege that he acted with "intent that conduct constituting a crime be performed." RCW 9A.28-.040(1). However, "[k]nowledge or intent can in some instances be fairly implied from the manner in which the offense is described or even from commonly understood terms." *State v. Moavenzadeh*, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998) (citing *Hopper*, 118 Wn.2d 151; *State v. Tunney*, 129 Wn.2d 336, 917 P.2d 95 (1996); *Kjorsvik*, 117 Wn.2d at 110).

¶9 Here, the element of intent necessary to support a charge of criminal conspiracy can be fairly implied. The crime of intimidating a witness requires that the accused attempted to influence the testimony of the witness. RCW

9A.72.110(1)(a). The common meaning of "attempt" is "to make an effort to do, accomplish, solve, or effect." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 140 (2002). Similarly, "[a] person acts with intent . . . when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Certainly, one must act with "the objective or purpose to accomplish a result"—in other words, with intent—in order to "make an effort to" influence the testimony of a witness. Thus, because the information alleged that Morgan had "attempted to influence the testimony" of the witness, CP at 8, the information adequately gave notice of the nature of the crime charged notwithstanding that it did not explicitly set forth the element of intent.

¶10 Morgan additionally contends that the information is insufficient because it does not allege that he "agree[d] with one or more persons" to engage in conduct which constitutes the crime of intimidating a witness. RCW 9A.28.040(1). However, "the term 'conspiracy' implies the involvement of two or more people." *State v. McCarty*, 140 Wn.2d 420, 427, 998 P.2d 296 (2000). Moreover, the common meaning of the term "conspire" is "to make an agreement with a group . . . to do some act." WEBSTER'S, *supra*, at 485. The information need not set forth the exact statutory language defining the crime. *Kjorsvik*, 117 Wn.2d at 108. Here, the information reasonably apprised Morgan that the crime with which he was charged involved agreeing with one or more persons to engage in conduct constituting a crime.

¶11 Because the information herein sufficiently alleged the elements of the crime of conspiracy to intimidate a witness, Morgan's belated challenge fails.[1]

---

[1] Although the information is constitutionally sufficient only if Morgan "has suffered no prejudice," *Hopper*, 118 Wn.2d at 156, we note that Morgan has not alleged prejudice. Moreover, our independent review of the record reveals no prejudice.

## III

¶12 Morgan further contends that the jury was erroneously instructed that it must be unanimous in order to collectively find that the State had failed to prove the facts supporting the imposition of the sentence enhancement. Morgan did not raise this issue during trial. Because such an instructional error is not of constitutional magnitude, Morgan may not raise it for the first time on appeal.

¶13 "[A] unanimous jury decision is not required to find that the State has failed to prove the presence of a special finding increasing the defendant's maximum allowable sentence." *State v. Bashaw*, 169 Wn.2d 133, 146, 234 P.3d 195 (2010). Rather, a nonunanimous decision by the jury "is a final determination that the State has not proved the special finding beyond a reasonable doubt." *Bashaw*, 169 Wn.2d at 146. Thus, a jury instruction stating that all 12 jurors must be unanimous in order to find the absence of a special finding increasing the maximum sentence for a crime is an incorrect statement of the law. *Bashaw*, 169 Wn.2d at 147 (citing *State v. Goldberg*, 149 Wn.2d 888, 893, 72 P.3d 1083 (2003)).

¶14 Here, the State sought a sentence enhancement pursuant to RCW 69.50.435(1)(c), alleging that Morgan unlawfully delivered a controlled substance within 1,000 feet of a school bus route stop. The jury was instructed that its decision with regard to the sentence enhancement must be unanimous:

> All twelve of you must agree in order to answer the special verdict form. In order to answer the special verdict form "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously have a reasonable doubt as to this question, you must answer "no."

CP at 46-47 (Instruction 25). Because this instruction requires the jury to be unanimous in order to find that the State did not prove the facts necessary to support the

sentence enhancement, the instruction is erroneous. *See Bashaw*, 169 Wn.2d at 146-47. However, a claim of instructional error is waived when not presented to the trial court unless the claimed error constitutes a manifest error affecting a constitutional right. RAP 2.5(a). Thus, only if this instructional error implicates constitutional protections can Morgan raise this claim of error for the first time on appeal.[2]

¶15 In *Bashaw*, our Supreme Court explained that the rule set forth therein "is not compelled by constitutional protections against double jeopardy, but rather by the common law precedent of this court, as articulated in *Goldberg*." 169 Wn.2d at 146 n.7 (citation omitted). The court thereafter enumerated the policies served by the rule adopted in *Goldberg* and reaffirmed in *Bashaw*, noting that " '[a] second trial exacts a heavy toll on both society and defendants by helping to drain state treasuries, crowding court dockets, and delaying other cases while also jeopardizing the interests of defendants due to the emotional and financial strain of successive defenses.' " *Bashaw*, 169 Wn.2d at 146 (alteration in original) (quoting *State v. Labanowski*, 117 Wn.2d 405, 420, 816 P.2d 26 (1991)). Thus, our Supreme Court held, where "a defendant is already subject to a penalty for the underlying substantive offense, the prospect of an additional penalty is strongly outweighed by the countervailing policies of judicial economy and finality." *Bashaw*, 169 Wn.2d at 146-47.

¶16 As noted in the Supreme Court's decision in *Bashaw*, the rule set forth therein is not compelled by constitutional protections against double jeopardy. Thus, the constitutional grounding for that rule, if any, must be found elsewhere. Relying upon our Supreme Court's articulation of the basis for the *Bashaw* rule, Division Three has determined that no

---

[2] "The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right." RAP 2.5(a).

such constitutional grounding exists. *State v. Guzman Nunez*, 160 Wn. App. 150, 248 P.3d 103, *review granted*, 172 Wn.2d 1004 (2011). There, Nunez challenged a jury instruction requiring unanimity for an acquittal on the aggravating factors alleged at his trial. *Nunez*, 160 Wn. App. at 156-57. Because Nunez had not raised the issue during trial, the court considered whether such an instructional error constituted a manifest constitutional error such that it could be raised for the first time on appeal. *Nunez*, 160 Wn. App. at 157.

¶17 Observing that instructional error is not necessarily constitutional error, the court determined that neither article I, section 21 nor article I, section 22 of our state's constitution is implicated where a jury is erroneously instructed that it must be unanimous in order to find that the State has not proved a special finding: "[T]here is no textual support in either provision for a right to non-unanimous acquittal of any criminal charge or consequence." *Nunez*, 160 Wn. App. at 159-60. Moreover, the court noted that our Supreme Court had cited no constitutional basis for its decision in *Bashaw*. The court further noted that in both *Bashaw* and *Labanowski*, our Supreme Court "recognize[d] that it is common law rule, not the constitution, that permits Washington juries to reject sentence enhancements or higher degree offenses less than unanimously." *Nunez*, 160 Wn. App. at 160.

¶18 In *Labanowski*, our Supreme Court considered whether a jury instructed on lesser included or lesser degrees of charged crimes must unanimously acquit the defendant of the greater crime prior to proceeding to determine its verdict on the lesser crime. 117 Wn.2d at 414. The court held that the jury need not acquit the defendant of the greater crime prior to determining its verdict on the lesser crime; rather, "a jury should be allowed to render a verdict on a lesser offense if it is unable to reach agreement on the greater offense." *Labanowski*, 117 Wn.2d at 423. Nevertheless, the court rejected the contention that an instruction

requiring the jury to reach agreement on the greater crime prior to rendering a verdict on the lesser crime violated the defendant's constitutional rights. *Labanowski*, 117 Wn.2d at 424. Rather, the court's decision rested upon the same policy concerns of judicial economy and finality that would later underlie its decision in *Bashaw*. *Labanowski*, 117 Wn.2d at 420; *see Bashaw*, 169 Wn.2d at 146.

¶19 After considering the basis for our Supreme Court's decisions in *Labanowski* and *Bashaw*, Division Three determined in *Nunez* that the instructional error therein—the same instructional error raised by Morgan here—was not of constitutional magnitude and, thus, could not be raised for the first time on appeal. 160 Wn. App. at 160-62. The decision in *Bashaw*, the court noted, "turned on a policy choice that the court acknowledged could be reasonably resolved either way." *Nunez*, 160 Wn. App. at 162. Thus, the court determined that the instructional error violated neither article I, section 21 nor article I, section 22 of our state's constitution. *Nunez*, 160 Wn. App. at 160-62.

¶20 We recognize that a panel of this division has determined that this claim of error may be raised for the first time on appeal. In *State v. Ryan*, 160 Wn. App. 944, 948, 252 P.3d 895, *review granted*, 172 Wn.2d 1004 (2011), the panel observed that "[t]he *Bashaw* court strongly suggests its decision is grounded in due process." This, the panel decided, provided the constitutional basis to allow for the issue to be presented pursuant to RAP 2.5(a). *Ryan*, 160 Wn. App. at 948-50.

¶21 We respectfully disagree with this conclusion. The Supreme Court made clear in *Bashaw* that the right at issue is based in Washington common law. 169 Wn.2d at 146 n.7. The due process clause of the Fourteenth Amendment to the United States Constitution[3] does not serve to protect

---

[3] The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

state law rights. *California v. Greenwood*, 486 U.S. 35, 43, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988). Thus, that due process clause cannot be the source of constitutional protection of the right described in *Bashaw*. Similarly, our state constitution's due process clause, article I, section 3,[4] has never been held to incorporate common law rights within its protections. To the contrary, constitutional rights and common law protections are distinct, and, when in conflict, constitutional rights prevail over common law rights. *See, e.g.*, *Tilton v. Cowles Publ'g Co.*, 76 Wn.2d 707, 715, 459 P.2d 8 (1969); *accord Senear v. Daily Journal-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982); *Cooper v. Runnels*, 48 Wn.2d 108, 112, 291 P.2d 657 (1955); *In re Welfare of Hudson*, 13 Wn.2d 673, 684, 126 P.2d 765 (1942).

¶22 Additionally, we note that Washington's due process clause is coextensive with that of the Fourteenth Amendment, providing no greater protection. *State v. McCormick*, 166 Wn.2d 689, 699, 213 P.3d 32 (2009); *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001); *State v. Manussier*, 129 Wn.2d 652, 679, 921 P.2d 473 (1996); *State v. Ortiz*, 119 Wn.2d 294, 303-05, 831 P.2d 1060 (1992). Thus, if Washington's due process clause protects the right described in *Bashaw*, so must the federal due process clause. We see no indication, however, that such a right is observed to exist in federal courts or in those of all other states. *Cf. Nunez*, 160 Wn. App. at 163 n.3 ("In the context of a jury's deciding aggravating factors, we found no case outside of the *Bashaw* decisions in which the issue of whether jurors should or should not deliberate to unanimity in order to acquit has been considered.").

¶23 Our Supreme Court has determined that the rule set forth in *Bashaw* is compelled by the common law. We take our Supreme Court at its word. Because Morgan did not

---

[4] Article I, section 3 of our state's constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

challenge the jury instruction in the trial court, the issue is waived and may not be raised for the first time on appeal.

¶24 Affirmed.

SCHINDLER, J., concurs.

¶25 ELLINGTON, J. (concurring in part and dissenting in part) — I concur in the majority's opinion that the information was sufficient and that the conviction should be affirmed.

¶26 I depart from the majority on the jury instruction issue and adhere to the view expressed in *State v. Ryan*, 160 Wn. App. 944, 948, 252 P.3d 895, *review granted*, 172 Wn.2d 1004, 258 P.3d 676 (2011) that *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), requires reversal of the sentence.